**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CLARA PACIULETE,** | : | |
|     **Plaintiff,** | : | |
| | : | |
|     **v.** | : | **CIVIL ACTION NO. 25-CV-4896** |
| | : | |
| **ANTHONY FAHN, aka/PACIULETE,** | : | |
| *et al.*, | : | |
|     **Defendants.** | : | |

_____

| | | |
|---|---|---|
| **CLARA PACIULETE,** | : | |
|     **Plaintiff,** | : | |
| | : | |
|     **v.** | : | **CIVIL ACTION NO. 25-CV-5472** |
| | : | |
| **ANTHONY A. PACIULETE,** | : | |
|     **Defendant.** | : | |

<u>**MEMORANDUM**</u>

**KENNEY, J.**                                          **OCTOBER 10, 2025**

Currently before the Court are two civil matters containing federal and state claims filed by *pro se* Plaintiff Clara Paciulete.  In the first action, filed on August 26, 2025 (Civil Action No. 25-4896 (hereafter "*Paciulete I*")), the Court previously entered an order granting Paciulete's motion to proceed *in forma pauperis* (ECF No. 8), and the matter is now ripe for screening under 28 U.S.C. § 1915(e)(2)(B).  As to the second case, filed on September 23, 2025 (Civil Action No. 25-5472 (hereafter "*Paciulete II*")), Paciulete's motion to proceed *in forma pauperis* submitted with her Complaint will likewise be granted, and the matter screened under § 1915(e)(2)(B).  For the following reasons, the Court will dismiss *Paciulete II* because it is

duplicative of *Paciulete I*. *Paciulete I* will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and for lack of subject matter jurisdiction.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations[1]

Paciulete maintains that, since 2022, the father of her child, Anthony Fahn,[2] family members, and various unnamed officials from federal and state law enforcement, offices of attorneys general, courts, and medical institutions have engaged in threats, physical violence, surveillance, and sabotage.  (*Paciulete I*, ECF No. 1 at 3-4; *Paciulete II*, ECF No. 2 at 2.) Without providing any additional facts, Paciulete opaquely alleges that her child was kidnapped in May 2022, but that "disclosure [was] delayed" for approximately ten days.  (*Paciulete I*, ECF No. 1 at 2.)  She states that her reports of the abduction to the State Department, the Department of Justice, the Federal Bureau of Investigation, and the National Center for Missing & Exploited Children "were ignored, escalating retaliation and threats."[3]  (*Id.*)  She claims to have endured

---

[1]  The factual allegations set forth in this Memorandum are taken from the Complaints in Paciulete's two civil matters.  (No. 25-4896, ECF No. 1; No. 25-5472, ECF No. 2.) The Court may also consider publicly available dockets that are relevant to Paciulete's claims. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  The Court adopts the sequential pagination assigned to the Complaint by the CM/ECF docketing system.

[2]  Paciulete used different last names for the child's father in her two Complaints.  For clarity, the Court will refer to the Defendant by the last name "Fahn," the one Plaintiff used in *Paciulete I*.

[3]  In addition to the two civil actions filed in the Eastern District of Pennsylvania, Paciulete filed a civil action in the United States District Court for the District of New Jersey in which she sought relief related to the alleged May 2022 abduction.  *See Paciulete v. New Jersey*, No. 25-090, 2025 WL 1125516, at *1 (D.N.J. Apr. 16, 2025).  In that matter, she claimed a babysitter abducted the child, apparently as part of a conspiracy with Paciulete's family, "aimed at undermining her legal rights, protection, safety and freedom."  (*Id.*, ECF No. 1 (Complaint) at 3).  She alleged that members of the local police department, Child Protective Services, and judicial authorities "engaged in a systematic pattern of bribery that compromised the integrity of the judicial system," which resulted in "favorable treatment toward certain parties" at Paciulete's expense.  *Id*. at 5.  In April 2025, the District Court dismissed the Complaint on grounds that it

"ongoing attempts on [her own] life," including the denial of police protection and medical care, "[d]enial of life-saving care at Virtua Voorhees Hospital," a "[f]orced psychiatric commitment" for ten days in June 2024, being poisoned in July 2025, which was allegedly "misclassified as [a] mental health crisis," and various alleged intimidating and violent acts.[4]  (*Paciulete I*, ECF No. 1 at 2-3; *Paciulete II*, ECF No. 2 at 2.)  She further claims that, on August 30, 2025, Fahn kidnapped their child and stole her vehicle as leverage to force her commitment in psychiatric hospitalization.  (*Paciulete II*, ECF No. 2 at 2.)  Paciulete asserts that Fahn and his family members have repeatedly given her drugs without her consent and unlawfully placed hidden devices in her vehicle.  (*Id.*)

---

contained only conclusory allegations against various public entities and failed to put the defendant on notice of the basis of claims against it, in violation of Federal Rule of Civil Procedure 8.  *Paciulete*, 2025 WL 1125516, at *2.   The Court granted Paciulete leave to amend her complaint, but she did not do so.

[4] Without specifying dates, actors, or locations, Paciulete claims that she was:

> Subjected to vehicular attacks, vandalism, nails in tires, theft, and destruction of property, three years of terroristic harassment, vandalism, death threats, location distribution, gun shots around the house, men in dark colored vehicles watching Plaintiff repeatedly for two to three hour periods and driving near her and minor child, men idling near home with headlights pointed at Plaintiff's car[,] use of loud noises in the middle of the night, home break-ins while Plaintiff and child are sleeping[,] destruction of computers and phones, retaliation with food, prescribed medication, shelter due to being kept in only temporary housing controlled by the father of the child, threats of being left stranded on the street with no money, food, and no protections with men that have followed and induced fear nearby to reinforce enforced disappearance, and homicide, destruction of vehicle without repairs, threats of incarceration, threats of homicide, threats against child, and threats of online cyber violence recruitment and collusion to harm or injure Plaintiff.

(*Paciulete I*, ECF No. 1 at 2.) (emphasis omitted).

Paciulete alleges that multiple officials in law enforcement, mental health, medicine, and the judiciary have colluded to sabotage, surveil, and retaliate against her.  (*Paciulete I*, ECF No. 1 at 2-3; *Paciulete II*, ECF No. 2 at 2.)  Police officers detained or threatened her with psychiatric detention and filed false reports when she reported tracking devices, being stalked, and attempted murder.  (*Paciulete I*, ECF No. 1 at 2-3; *Paciulete II*, ECF No. 2 at 2.)  Paciulete faults them for failing to investigate the kidnapping(s) of her child and the crimes against her. (*Id*.)  At Virtua Willingboro and Hampton Hospitals, physicians purportedly falsified records that omitted her status as a victim of violence, and medical professionals credited statements of Fahn over hers to justify her involuntary confinement.  (*Paciulete I*, ECF No. 1 at 2-3; *Paciulete II*, ECF No. 2 at 2.)  She claims to have been denied access to six Pennsylvania and thirty  New Jersey women's shelters, which reflects "systemic collusion."  (*Paciulete I*, ECF No. 1 at 3.)  Without citing specific conduct, she claims that federal and state courts have denied her petitions for protection and asylum without substantive review.  (*Paciulete II*, ECF No. 2 at 2.)

### B.    Procedural History

Paciulete filed *Paciulete I*, naming as Defendants Fahn, "Law enforcement officers in New Jersey and Pennsylvania (named and unnamed)," "Officials of the New Jersey and Pennsylvania Attorney General Offices," "Federal officials (FBI, DOJ, DHS) who failed to investigate or provide protective measures," "Medical professionals who falsified reports and concealed attempted homicide," and "John/Jane Does 1-50: unknown actors engaged in surveillance, retaliation, or collusion."  (*Paciulete I*, ECF No. 1 at 1-2.)  She seeks to raise claims for violations of her civil rights under 42 U.S.C. § 1983, conspiracy under 42 U.S.C. § 1985, *habeas corpus* relief under 28 U.S.C. § 2241, the Americans with Disabilities Act ("ADA"), the Convention Against Torture ("CAT"), and the International Covenant on Civil and Political

Rights ("ICCPR").  (*Id.* at 3-4.)  In addition to her motion to proceed *in forma pauperis* (ECF No. 2), Paciulete moves to seal the proceedings (ECF No. 5), for an emergency temporary restraining order (ECF No. 3), and for injunctive relief (ECF No. 4).  On September 28, 2025, she submitted various exhibits and a "Declaration" (ECF Nos. 9, 10, 11) reiterating and supporting her prior claims.  Paciulete requests injunctive, mandamus, and monetary relief, and requests emergency relocation, housing, and access to the witness protection program.  (ECF No. 1 at 3.)

On September 23, 2025, Paciulete filed *Paciulete II*, naming only her child's father, Fahn, as a Defendant.  (*Paciulete II*, ECF No. 2 at 2.)  Like her prior case, she seeks to assert claims under § 1983, CAT, ICCPR, and *habeas corpus*, plus a claim for relief under the Violence Against Women Act ("VAWA").  (*Id.* ECF No. 2 at 1, 3, 4.)  Paciulete filed motions for emergency relief (ECF Nos. 3, 10), a protective order (ECF No. 8), and a request to seal the proceedings (ECF No. 9.).  She requests injunctive, declaratory, and monetary relief.  (ECF No. 2 at 5.)

## II.    STANDARD OF REVIEW

The Court previously granted Paciulete's motion for leave to proceed *in forma pauperis* in *Paciulete I* and will now grant leave in *Paciulete II* because it appears that she does not have the ability to pre-pay the fees to commence this case.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) require the Court to dismiss the Complaint if it is frivolous or fails to state a claim.  A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The use of the term "frivolous" in § 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation."  *Id.*  Section 1915 accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss

those claims whose factual contentions are clearly baseless . . . ." *Id.* at 327. "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible[.]" *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). A claim is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Paciulete is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F. 3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.* With respect to affirmative defenses, such as res judicata, dismissal is proper if application of the defense is apparent on the face of the complaint; [the Court] may also look beyond the complaint to public records, including judicial proceedings." *Weinberg v. Scott E. Kaplan, LLC*, 699 F. App'x 118, 120 n.3 (3d Cir. 2017); *Gimenez v. Morgan Stanley DW, Inc.*, 202 F. App'x 583, 584 (3d Cir. 2006) (*per curiam*) (observing that "*[r]es judicata* is a proper basis for dismissal under 28 U.S.C. § 1915(e)(2)(B)").

6

Furthermore, the Court must dismiss any claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.").

## III.   DISCUSSION

### A.   Claim Splitting Doctrine Applies to *Paciulete II*

Federal courts recognize a prohibition against splitting of claims relating to the same transaction or occurrence. *See Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977). "Just as *res judicata* applies to a second action filed after a final adjudication of the first action, the rule against claim splitting applies when . . . two suits are pending at the same time." *Id.* The doctrine reflects that a district court, "[a]s part of its general power to administer its docket, has the authority to stay or dismiss a suit that is duplicative of another case then pending in federal court." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). The rule applies when two civil actions: "(1) take place in the same court; (2) with the same defendants; (3) involving the same subject matter." *McKenna v. City of Philadelphia*, 304 F. App'x 89, 92 (3d Cir. 2008).

*Paciulete I* and *II* plainly meet these criteria. *Paciulete II* echoes the first lawsuit in nearly all respects. *Paciulete II* includes the same defendant, Fahn, and although Paciulete has removed the rest of the named Defendants, she continues to make the same collusion arguments

7

about various entities without expressly naming them.  The two cases share the same operative

facts and rely on nearly all the same legal theories.[5]  At bottom, Paciulete makes allegations in

both actions about "[o]rchestration of violence and legal abuse," and "coercion" by Fahn and

numerous other unnamed parties.  (*See Paciulete I*, ECF No. 1 at 2; *Paciulete II*, ECF No. 2 at

6.)  "When the difference between the two cases is 'purely semantic' and both cases rely on the

'same operative facts and legal principles,' the cases involve the same subject matter."  *Matthews

Int'l Corp. v. Lombardi*, No. 20-89, 2020 WL 1309399, at *1 (W.D. Pa. Mar. 19, 2020) (citing

*McKenna*, 304 F. App'x at 92).  Because the two actions are duplicative, the Court will dismiss

*Paciulete II* without prejudice.[6]  *McKenna*, 304 F. App'x at 93 (noting that a court may dismiss

without prejudice, stay, or consolidate two duplicative lawsuits).

    **B**.    **Claims Under § 1983 and § 1985**

        **1.**    **§ 1983 Claim Against Fahn Regarding Custody Rights**

    The vehicle by which federal constitutional claims may be brought in federal court is 42

U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S.

42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995) ("The

color of state law element is a threshold issue; there is no liability under § 1983 for those not

acting under color of law.").

---

[5] Because the Complaint in *Paciulete I* was filed on August 26, it did not describe the alleged August 30 abduction of Paciulete's child, but the Plaintiff included that allegation in a subsequent "Declaration" submitted in *Paciulete I*.  (*See Paciulete I*, ECF No. 11 at 3-4.)

[6] When final judgment is entered in *Paciulete I*, any second action in federal court will be barred by *res judicata*.  *Walton*, 563 F.2d at 71 n.4; *McKenna*, 304 F. App'x at 94.  As noted *infra*, Paciulete will not be prevented from bringing state law claims in state court.

Paciulete asserts that Fahn colluded with police, judges, and agencies to deprive her of her parental custodian rights.  (*See Paciulete I*, ECF No. 1 at 2-4.)  However, the factual allegations in the Complaint do not plausibly assert that Fahn is a state actor amenable to suit under § 1983.  Whether a private individual is acting under color of state law — i.e., whether the defendant is a state actor — depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself."  *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  "To answer that question, [the United States Court of Appeals for the Third Circuit] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted); *see also Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'") (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

Paciulete does not allege that Fahn exercised powers that are traditionally the exclusive power of the state.  Rather, she claims that Paciulete worked in concert with "police, judges, and agencies" to deprive her of her custody rights.  However, it is well established that "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge."  *Dennis v. Sparks*, 449 U.S. 24, 28 (1980); *see also*

*Walsh v. Walsh*, 765 F. App'x 243, 246 (3d Cir. 2019).   Thus, her claim that Fahn is a state actor

via custody proceedings that have not been resolved in her favor is not plausible.[7]

### 2.    § 1983 Claims Against State and Federal Law Enforcement Officials and Medical Personnel

Paciulete contends that law enforcement officials violated her civil rights by allegedly

failing to investigate the kidnapping of her child and the crimes committed against her, and by

threatening her with psychiatric hospitalization when she reported "stalking, surveillance

devices, and attempted murder."[8]  (*Paciulete I*, ECF No. 1 at 2-3.)  As to the first claim, "[a]n

allegation of a failure to investigate, without another recognizable constitutional right, is not

sufficient to sustain a section 1983 claim."  *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir.

2003) (quotations omitted); *see also Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135

---

[7] Paciulete broadly refers to "judges" in her statement alleging Fahn's collusion with entities to deny her custody rights, but she does not name any judges as Defendants.  Even if she had, that claim would be dismissed with prejudice.  Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction.  *See, e.g., Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (*per curiam*); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (*per curiam*).  An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge."  *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000).  Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'"  *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).  A judge ruling on a petition for custodial rights filed in a case he or she is presiding over is acting in his or her judicial capacity over an action and would be absolutely immune from suit for money damages.

[8] Although Paciulete lists "Officials of the New Jersey and Pennsylvania Attorney General Offices" among the Defendants, she never mentions those prosecutorial offices or individuals from those offices in the body of her Complaint.  To the extent she is referring to prosecuting attorneys, they are generally shielded from suits for damages alleging on civil rights claims.  *See Foster v. Penn. Hum. Rel. Comm'n*, 157 F. App'x 488, 490 (3d Cir. 2005) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)).

(3d Cir. 2015) (*per curiam*) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual.").

As for her allegation that police "threatened" her with psychiatric care, it is unclear what Constitutional right she believes was infringed.  To the extent that she alleges it constituted harassment or threat of force, such allegations without injury or damage do not state a § 1983 claim.  *See Burkholder v. Newton*, 116 F. App'x 358, 360 (3d Cir. 2004); *Wilson v. Horn*, 971 F. Supp. 943 (E.D. Pa. 1997) (verbal abuse and harassment does not rise to the level of a constitutional violation). *Maclean v. Secor*, 876 F. Supp. 695, 698 (E.D. Pa. 1995) (noting that a constitutional claim based on verbal threats will fail whether asserted under the ban against cruel and unusual punishment in the Eighth Amendment or the substantive due process clause in the Fourteenth Amendment). Her civil rights claims alleged against unidentified officers are thus not plausible and will be dismissed.

Paciulete also takes issue with unidentified medical personnel for their alleged role in her involuntary commitments.  Those claims are best construed under Pennsylvania's Mental Health Procedures Act ("MHPA").[9]  The purpose of the MHPA, 50 Pa. Stat. and Cons. Stat. §§ 7301, *et seq*., is "to assure the availability of adequate treatment to persons who are mentally ill, and . . . to establish procedures whereby this policy can be effected."  *Id.* § 7102.  The MHPA permits the involuntary commitment of persons who constitute a "clear and present danger" to themselves or others.  *Id.* § 7301(a).  Section 301(b) provides guidance to determine what

---

[9]  For purposes of statutory screening, the Court assumes the involuntary commitment occurred in Pennsylvania and only addresses any such claim.  It appears, however, that events mentioned in Paciulete's Complaint may have occurred in the State of New Jersey.  (*See Paciulete I*, ECF No. 1 at 2, 3 (referring to Virtua Willingboro, Hampton Hospital, and Virtua Voohees Hospital).  If she intended to assert claims for involuntary commitments, or any other events, that took place in New Jersey, venue for such claims would not be proper in this District and should be brought in the District of New Jersey.  *See* 28 U.S.C. §§ 110, 1391(b) & 1406(a).

constitutes a "clear and present danger" warranting immediate emergency care. *Id*. § 7301(b).

Section 302 allows involuntary commitment of a person for emergency psychiatric examination

for up to 120 hours, where "reasonable grounds [exist] to believe that [the person] is severely

mentally disabled and in need of immediate treatment." *Id*. § 7302(a).  Involuntary treatment

pursuant to this section may be obtained with or without a warrant. *See id.* § 7302(a)(1)-(2).

The duration of involuntary treatment may be extended in certain circumstances. *Id.* § 7302(d).

 The United States Court of Appeals for the Third Circuit has found that the initial seizure

and involuntary commitment ordered pursuant to the MHPA satisfies both the Fourth

Amendment and the Fourteenth Amendment, provided that the government officials reasonably

determined that the individual posed a "clear and present danger" to themselves or others. *See*

*Doby v. DeCrescenzo*, 171 F.3d 858, 871-72 (3d Cir. 1999).  Short-term involuntary

commitments under the MHPA, even without a hearing, generally do not violate procedural or

substantive due process. *See Benn v. Universal Health Sys.*, 371 F.3d 165, 174 (3d Cir. 2004)

(citing, *inter alia*, *Doby*, 171 F.3d at 870, 871 n.4).  Critically, in the context of commitments

under the MPHA, "courts have held that private health care facilities and physicians acting under

the provisions of the MHPA are not state actors for purposes of Section 1983." *Little v. Outlaw*,

No. 24-4033, 2025 WL 581164, at *7 (E.D. Pa. Feb. 20, 2025) (quoting *Covell v. Smith*, No. 95-

0501, 1996 WL 750033, at *6 (E.D. Pa. Dec. 30, 1996) (collecting cases)).  Since nothing in the

Complaint suggests otherwise, § 1983 is inapplicable here. *See, e.g.*, *Benn,* 371 F.3d at 173

(holding that persons who petition for the involuntary commitment of others are not state actors);

*Covell,* 1996 WL 750033, at *6 (finding doctor acting under MHPA not a state actor); *Janicsko*

*v. Pellman*, 774 F. Supp. 331, 338-39 (M.D. Pa. 1991) (finding that private hospital and

physicians were not state actors acting under MHPA), *aff'd*, 970 F.2d 899 (3d Cir. 1992).

Accordingly, the Court will dismiss Paciulete's constitutional claims based on her allegations of involuntary commitment.[10]

### 3. Does #1-50, Claims Against Actors Engaged in "Surveillance, Retaliation, and Collusion"

Among the groups listed as Defendants in the Complaint, Paciulete includes "John/Jane Does 1-50: unknown actors engaged in surveillance, retaliation, or collusion." (*Paciulete I*, ECF No. 1 at 2.) Despite a lengthy list of "Ongoing Attempts [on her] Life" itemizing seemingly specific events, Paciulete provides no description of any perpetrators or surrounding circumstances and she does not give a time frame for the "attempts." (*Id.*) Although the Court must liberally interpret her *pro se* Complaint, Paciulete's allegations are not only conclusory, but "too fanciful, fantastic or delusional" to comprise a plausible claim. *Campbell v. Columbia Univ.*, No. 22-10164, 2023 WL 6038024, at *7 (S.D.N.Y. Sept. 15, 2023); *see also Neitzke*, 490 U.S. at 325 (holding that the use of the term "frivolous" in § 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation.").

---

[10] Paciulete asserts that medical professionals misused her medical records and/or statements she made in them. (*See Paciulete I*, ECF No. 1 at 2.) To the extent she intended to bring a federal claim for violations of the Health Insurance Portability and Accountability Act ("HIPPA"), there is no federal private right of action under HIPAA. *See, e.g., Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007); *Acara v. Banks*, 470 F.3d 569 (5th Cir. 2006); *Altavilla v. Geisinger Wyoming Valley Med. Ctr.*, No. 17-1704, 2018 WL 1630961, at *2 (M.D. Pa. Mar. 12, 2018), *report and recommendation adopted*, 2018 WL 1629870 (M.D. Pa. Apr. 4, 2018) ("'The ability to bring an enforcement action to remedy HIPAA violations, and ensure that a healthcare provider is HIPAA compliant, lies within the exclusive province of the Secretary of Health and Human Services, not the hands of private citizens.'") (quoting *Polanco v. Omnicell*, Inc., 988 F. Supp. 2d 451, 469 (D.N.J. 2013)). *See also, Cobb v. PrimeCare Med. Corp.*, No. 18-1516, 2020 WL 13729620, at *6 (M.D. Pa. Jan. 29, 2020) (citations omitted), *report and recommendation adopted*, 2020 WL 13730063 (Feb. 24, 2020) (stating that HIPAA "does not create a private right of action for alleged disclosures of confidential medical information. . . . Therefore, neither [HIPAA] nor 42 U.S.C. § 1983 supports an action based on HIPPA violations.") (internal quotation omitted).

Among her allegations, Paciulete claims that "men in dark colored vehicles watch[ ]
Plaintiff repeatedly for two to three hour periods and driving near her and minor child," and she
takes note of "men idling near [her] home with headlights pointed at Plaintiff's car . . . [and] loud
noises in the middle of the night." (*Id*.) She alleges that she has endured "three years of
terroristic harassment, vandalism, death threats, location distribution, [and] gun shots around the
house," as well as "home break-ins" where computers and phones have been destroyed. (*Id*.)
Some of her statements in the "ongoing attempts" are disjointed and unintelligible: "no
protections with men that have followed and induced fear nearby to reinforce enforced
disappearance [] and homicide," and "threats of homicide, threats against child, and threats of
online cyber violence recruitment and collusion to harm or injure Plaintiff." (*Id*.) Considering
this litany of suspicious, and in some instances fantastical, acts she relates here, the Court
concludes that these allegations lack a basis in fact, and they will be dismissed as frivolous.
*See, e.g., Caterbone v. Nat'l Sec. Agency*, 698 F. App'x 678, 679 (3d Cir. 2017) (*per curiam*)
(dismissing appeal as lacking an arguable basis in fact where underlying allegations were based
on plaintiff's assertion that he was a "victim of U.S. sponsored mind control and cointelpro
harassment program"); *Campbell*, 2023 WL 6038024, at 7-8 (dismissing claim where *pro se*
plaintiff's allegations describing a "vast conspiracy" by Columbia where it engaged in a bribery
campaign targeting her sorority sisters to convince them to stalk and kill plaintiff, as well as
other schemes to harass and assassinate her were wholly conclusory and fantastical); *Price v.
Fed. Bureau of Investigation*, No. 20-3015, 2020 WL 4368063, at *3 (E.D. Pa. July 30, 2020)
(finding plaintiff's allegations to be factually frivolous where plaintiff asserted that "numerous
law enforcement agencies, attorneys, prison officials, and medical professionals have used
neurological and psychological technology to control the 'four basic groups of his brain and

mental functions'  and "that the use of this 'technology' and 'mind control' has caused him numerous impairments and drove him to criminal and erratic behavior"), *aff'd*, 845 F. App'x 106 (3d Cir. 2021); *Sanders v. New York Times*, No. 23-2105, 2023 WL 3724818, at *5 (S.D.N.Y. May 30, 2023) (a *pro se* "Plaintiff's generalized assertions – that the United States military is attempting to kill her and that the defendant media companies have failed to report her allegations – do not provide any plausible factual support for a viable legal claim and appear to rise to the level of the irrational.").

### 4.    Claim under § 1985

42 U.S.C. § 1985(3) creates a cause of action against any two persons who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . ." 42 U.S.C. § 1985(3).  To state a plausible claim under § 1985(3) a plaintiff must allege the following elements:  (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir.1997); *see also Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct" ); *Hauptmann v. Wilentz*, 570 F. Supp. 351, 386 (D.N.J. 1983) ("If the conspiracy only affects the plaintiff individually, the allegations will not satisfy the class-based animus requirement."), *aff'd*, 770 F.2d 1070 (3d Cir. 1985), *and aff'd sub nom., Appeal of Hauptmann*, 770 F.2d 1070 (3d Cir. 1985).  Nothing in the Complaint suggests any factual basis

for race or class-based discrimination, and the allegations only discuss the harms that allegedly affected Paciulete personally.  To the extent Paciulete invokes this statute, her claim is not plausible.

### B.      CAT and ICCPR Claims

Paciulete's claims under the CAT and the ICCPR are not plausible and will be dismissed. Courts have held that the treaties like the CAT and the ICCPR are "not self-executing and do not confer rights beyond those granted by the implementing legislation." *Feng Ying Li v. Att'y Gen. of U.S.*, 321 F. App'x 143, 145 (3d Cir. 2009) (citing *Jin v. Mukasey,* 538 F.3d 143, 159–60 (2d Cir. 2008)); *see also Brown v. Victor*, 337 F. App'x 239, 241 (3d Cir. 2009) (citing *Auguste v. Ridge,* 395 F.3d 123, 132 n.7 (3d Cir. 2005)) (Courts have held that the CAT "is not self-executing, and, therefore, does not create judicially enforceable rights unless it is first given effect by implementing legislation."); *Igartua De La Rosa v. United States*, 32 F.3d 8, 10 n. 1 (1st Cir. 1994) (holding that ICCPR is not privately enforceable); *Nall v. Sussex Corr. Inst*., No. 19-2187, 2020 WL 1975155, at *4 (D. Del. Apr. 24, 2020) ("Similarly, the International Covenant on Civil and Political Rights does not provide for a private cause of action.").  Courts have also held that domestic laws implementing the CAT do not provide civil redress for torture within the United States.  *Brown*, 337 F. App'x at 241 (citing *Renkel v. United States,* 456 F.3d 640, 644-45 (6th Cir. 2006)).  In sum, neither of these provisions provide a plausible basis for a claim here.

### C.      Claim Under the ADA

Paciulete asserts as the basis for her ADA claim that she has been discriminated against "as mother, woman, and caregiver of a child with special needs," and that she has experienced "custody interference and targeting based on gender role and disability-related vulnerabilities." (*Paciulete I*, ECF No. 1 at 4.)  Although she does not specify the provision, the Court

understands Paciulete to seek relief under Title II of the ADA.  To allege a plausible violation of

Title II of the ADA, a plaintiff must assert that (1) she is a "qualified individual with a

disability;" (2) he is being excluded from participation in or being denied the benefits of some

"services, programs, or activities," by reason of her disability; and (3) the entity which provides

the service, program or activity is a public entity.  *See, e.g., Layton v. Elder*, 143 F.3d 469, 472

(8th Cir.1998); *Bowers v. National Collegiate Athletic Ass'n*, 9 F. Supp. 2d 460, 475 (D.N.J.

1998); *Adelman v. Dunmire*, No. 95-4039, 1997 WL 164240 (E.D. Pa. Mar. 28, 1997).

  Paciulete fails to articulate a plausible claim against any entity in this action.  She appears

to allege that her rights under the ADA were infringed upon during the custody proceedings, but

she has not sued any Defendants that would be plausibly liable under Title II.   The proper

defendant under a Title II claim is a public entity or an individual who controls or directs the

functioning of the public entity.  *See Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002).

Therefore, as an initial matter, any ADA claim alleged against Fahn must be dismissed with

prejudice because he is not a "public entity" within the meaning of the ADA, nor is it alleged

that he controls or directs the functioning of an appropriately identified public entity.  *See*

*Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 938, 942 (3d Cir. 2019) (*per curiam*)

("Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple

reason that there is no such liability.")  Furthermore, she has not sued a public entity in this

action, but only "officers" and "officials" in federal and state law enforcement and medical

professionals.  (*Paciulete I*, ECF No. 1 at 1-2.)  To the extent that she has sued persons who may

be employed by public entities, they are not liable under the ADA.  *See Emerson*, 296 F.3d at

189, citing *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) ("the ADA addresses its rules to

employers, places of public accommodation, and other organizations, not to the employees or

managers of these organizations"), *overruled on other grounds by Bd. Of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001).  Paciulete's ADA claim also comes up short because she does not allege that she is a "qualified individual with a disability" or that she is being excluded from participation in a "service, program, or activit[y]" by reason of her disability.  Paciulete refers to her gender in discussing her ADA claim, but gender does not qualify as a disability.  She vaguely refers to "disability-related vulnerabilities," but she provides no explanation of what disability she is referring to.  Accordingly, the claim will be dismissed.

### D.  *Habeas Corpus* Claim

Paciulete has requested *habeas corpus* relief pursuant to 28 U.S.C. § 2241, apparently based on her involuntary psychiatric hospitalizations.  But Paciulete's only avenue for this relief in federal court is through a *habeas* petition, not a civil action complaint like she filed here.  *See Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006) (stating that a § 1983 complaint that seeks release may not proceed because the proper vehicle for such claims is a petition for writ of *habeas corpus*).  The Court will dismiss this claim with prejudice as it relates to a civil action, but this does not prevent her from bringing the claims in a *habeas* petition if she chooses to do so.

### D.  Request for Mandamus Relief

Paciulete also cites to 28 U.S.C. § 1361 as a basis of jurisdiction for her action.  (*Paciulete I*, ECF No. 1 at 1.)  That statute provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361; *see also Semper v. Gomez*, 747 F.3d 229, 250-51 (3d Cir. 2014) (for a district court to have subject matter jurisdiction to compel the action of an individual pursuant to § 1361, the

individual must be "an officer or employee of the United States or any agency thereof."). A party seeking a writ of mandamus must show that he has "(i) no other adequate means of obtaining the desired relief and (ii) a 'clear and indisputable' right to issuance of the writ." *Mote v. United States Dist. Ct. for Middle Dist. of Pennsylvania*, 858 F. App'x 39, 40 (3d Cir. 2021) (*per curiam*) (citations omitted). Considering that Paciulete has failed to identify an appropriate, individual official owing her duty, and that no cognizable and enforceable right to relief exists here, there is no "clear and indisputable" right to issuance of the writ requiring federal officials to act.[11] This claim will be dismissed for lack of subject matter jurisdiction.

### E.    State Law Claims

Because the Court has dismissed Paciulete's federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over the remaining state law claims, which are best construed as claims for invasion of privacy,[12] assault, and property damage to her vehicle. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." "Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen

---

[11] 28 U.S.C. § 1651 also confers jurisdiction on a district court to issue a writ of mandamus "in aid of" its own jurisdiction. Section 1651 is not applicable here since Paciulete's requested relief is not in aid of our jurisdiction.

[12] It is difficult to discern what claims Paciulete intended to bring as it relates to her allegations of violation of privacy. It appears to be related to her allegations that Defendant Paciulete and his family placed hidden devices in her vehicle and unlawfully surveilled her, which is best construed as a tort claim for invasion of privacy.

of the same state as any defendant.'" *Lincoln Ben. Life,* 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).

As an initial matter, Paciulete does not allege a sufficient amount in controversy. Even if she had, she has not pleaded diversity of citizenship. In the Complaint in *Paciulete I*, Paciulete does not allege her citizenship or those of any Defendants. In *Paciulete II*, she claims to be "currently residing" in Pennsylvania (*see id.*, ECF No. 2 at 2), but declares under the penalty of perjury in her motion to proceed *in forma pauperis* that she is "a resident of New Jersey resident." (*See id.* ECF No. 1 at 1.) She also provides a New Jersey mailing address in documents submitted in *Paciulete I*. (*See Paciulete I*, ECF No. 9-2 at 1.) She alleges in *Paciulete II* that Defendant Fahn is also a resident of New Jersey. (*See Paciulete II*, ECF No. 2 at 2.) In any case, she has sued Defendants in *Paciulete I* that would appear to be citizens of New Jersey and Pennsylvania, and her citizenship in either of those states destroys diversity. Accordingly, the Court will dismiss the remaining state law claims for lack of subject matter jurisdiction. This dismissal will be without prejudice, so Paciulete can file these claims in the appropriate state court if she chooses to do so. The Court expresses no opinion on the merits of any such lawsuit.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Paciulete leave to proceed *in forma pauperis* in *Paciulete II* (ECF No. 1) and dismiss that case without prejudice because she filed an earlier lawsuit pending in this Court and raising the same claims in *Paciulete I*. Any remaining motions in that matter will be denied. The federal claims in *Paciulete I* will be dismissed as frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). The

Court will dismiss the request for mandamus relief and any state law claims in *Paciulete I* without prejudice for lack of subject matter jurisdiction.  The Court concludes that under the circumstances of this case, Paciulete cannot cure the defects in her Complaint, so she will not be given leave to amend.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) ("[D]ismissals of frivolous claims do not require leave to amend due to the long tradition of denying leave to amend . . . when amendment is inequitable or futile.").  Because her Complaint will be dismissed, her requests for injunctive relief[13] will be denied.  Her emergency motions in *Paciulete I* for a temporary restraining order and for injunctive relief will also be denied since she cannot demonstrate success on the merits of her claims.  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in h[er] favor, and that an injunction is in the public interest.").

Paciulete's motions to seal proceedings in *Paciulete I* (ECF No. 5) and *Paciulete II* (ECF No. 9) are denied, except that *Paciulete I*, ECF Nos. 9, 10, and 11, and all filings by the Plaintiff in *Paciulete II* will be deemed restricted to Court Participants' View Only because they contain the name of a minor.

---

[13] "'[A] request for injunctive relief by itself does not state a cause of action. . . .  An injunction is a remedy, not a separate claim or cause of action.  A pleading can . . . request injunctive relief in connection with a substantive claim, but a separately pled claim or cause of action for injunctive relief is inappropriate.'"  *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 955 F. Supp. 2d 452, 465 (E.D. Pa. 2013) (quoting *Jensen v. Quality Loan Serv. Corp.*, 702 F.Supp.2d 1183, 1201 (E.D. Cal. 2010)).

An appropriate Order dismissing these cases will be entered separately. *See* Federal Rule of Civil Procedure 58(a).

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, J.**